Case 5:19-cv-00268-LCB     Document 43-1     Filed 10/04/21     Page 1 of 28

USCA11 Case: 20-11292     Date Filed: 09/03/2021     Page: 1 of 26

FILED
2021 Oct-04  AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11292

_____

D.C. Docket No. 5:19-cv-00268-LCB


NATIONAL TRUST INSURANCE COMPANY,

Plaintiff - Appellant,

versus

SOUTHERN HEATING AND COOLING INC,
STEVEN HOGE,
as Personal Representative of the Estate of Billy Carl Hoge,
deceased and as Personal Representative of the
Estate of Mary Ellen Hammon Hoge,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 3, 2021)

Before JORDAN, BRASHER, and ANDERSON, Circuit Judges.

JORDAN, Circuit Judge:

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in relevant part that in "a case of actual controversy . . . any court of the United States . . . may declare the rights and legal relations of any interested party seeking such declaration." As the permissive text suggests, a district court has discretion in deciding whether to entertain an action under the Act. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83 (1995). In this appeal we address the role that parallel proceedings play in the exercise of discretion under § 2201(a).

# I

Carl and Mary Hoge died from carbon monoxide poisoning in January of 2018 at their Alabama home. Their son, Steven Hoge, sued Southern Heating and Cooling, Inc. and others in Alabama state court for wrongful death. He alleged that Southern Heating had failed to properly service the heating and air conditioning (HVAC) unit at the Hoges' home, resulting in the release of dangerous levels of carbon monoxide. Specifically, Mr. Hoge claimed that, in two service calls weeks before his parents died, Southern Heating did not correct a misalignment of the HVAC unit's furnace burner. That misalignment purportedly caused the fire that generates heat inside the furnace to ignite outside of the location within the furnace where it is intended to burn. The furnace therefore generated excessive amounts of carbon monoxide that

accumulated in the home and eventually killed Carl and Mary.[1]

National Trust Insurance Company, the commercial liability insurer for Southern Heating, then filed suit in federal court against Mr. Hoge and Southern Heating (but not any of the other state-court defendants) under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). National Trust—which is not a party in the Alabama state court action—sought a declaration that it has no duty to defend or indemnify Southern Heating because there is no coverage under its policy. According to National Trust, carbon monoxide is a "pollutant" that comes within a pollution exclusion in the policy issued to Southern Heating.

Mr. Hoge moved to dismiss National Trust's declaratory judgment action, and Southern Heating agreed with his position. They argued that whether carbon monoxide falls within the insurance policy's definition of "pollutants" is unresolved under Alabama law and is therefore a decision to be left to the Alabama courts. In addition, they asserted that the pollution exclusion has a "hostile fire exception" which applies because the misalignment of the HVAC unit's furnace burner caused the fire to burn in the wrong location. So, even if carbon monoxide were a pollutant under the insurance policy, the district court would nevertheless be required to decide whether the Hoges' deaths fall within the hostile fire exception. That inquiry

---

[1]The other defendants sued by Mr. Hoge included Mountain Air, LLC, Mike Crawford d/b/a Mountain Air Heating and Cooling, Tri-State Propane Gas, Inc., and United Propane Gas, Inc.

would include determining the alignment of the burner and the extent to which any misalignment was responsible for the Hoges' deaths. That analysis, according to Mr. Hoge and Southern Heating, would significantly overlap with the factual evaluation that the Alabama state court will undertake to determine liability in the wrongful death action. Those and other issues counseled against the district court resolving National Trust's declaratory judgment action.

The district court, exercising its discretion, declined to entertain National Trust's declaratory judgment action and dismissed it without prejudice. First, it found that the Alabama state court action was parallel to the federal declaratory judgment action. *See* D.E. 33 at 10. Second, it concluded that the non-exhaustive guideposts set out in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005), weighed in favor of not hearing National Trust's action. *See* D.E. 33 at 10–13.

National Trust now appeals. Reviewing for abuse of discretion, *see Wilton*, 515 U.S. at 288, we affirm. When relevant, the degree of similarity between concurrent state and federal proceedings is a significant consideration in deciding whether to entertain an action under the Declaratory Judgment Act. Here the district court properly took into account that similarity in its consideration of the *Ameritas* guideposts. The district court's perspective may not be the only way to view the two proceedings at issue, but it is a permissible way to look at them, and that is enough

4

to constitute a reasonable exercise of discretion.[2]

## II

In *Ameritas*, we set out the following non-exclusive guideposts for district courts to consider in deciding whether to adjudicate, dismiss, or stay a declaratory judgment action under § 2201(a):

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
> (6) whether there is an alternative remedy that is better or more effective;

---

[2] Before we begin our discussion, we touch upon a point of nomenclature. At times, the parties and the district court have used the term "abstention." But as the Seventh Circuit has explained, "the use of the term 'abstention' . . . is not entirely accurate [in this context], as it normally refers to a group of judicially-created doctrines. The decision to stay [or dismiss] an action under the Declaratory Judgment Act does not require the court reach for a judicially-created abstention doctrine. Rather the Act itself provides the district court with the necessary discretion." *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010).

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331.

National Trust contends that the *Ameritas* guideposts become relevant only when there are parallel state and federal proceedings. The district court seemingly agreed. It explained that "parallelism is a necessary [consideration], but not [a] determinative [one]," and it considered parallelism as a discrete, threshold requirement. *See* D.E. 33 at 9–10. National Trust, however, disagrees with the district court's conclusion that the proceedings in this case are parallel. Mr. Hoge and Southern Heating respond that the existence of parallel proceedings is not a threshold requirement. To this National Trust replies, in the alternative, that whether concurrent actions are parallel should be given significant weight in deciding whether to exercise discretion under the Declaratory Judgment Act. Because it maintains that the district court's finding on parallelism is wrong, National Trust submits that the dismissal was an abuse of discretion. We address National Trust's main and alternative arguments below.

6

**A**

To the extent that National Trust is asking us to create a bright-line rule that a district court cannot decline to entertain an action under the Declaratory Judgment Act unless there are parallel proceedings, its request comes too late given our existing precedent. We have already upheld district court dismissals of declaratory judgment claims in situations where there were no pending parallel proceedings. *See Stevens v. Osuna*, 877 F.3d 1293, 1311–13 (11th Cir. 2017) (declaratory judgment sought as to closures of immigration proceedings: no pending parallel proceedings in federal immigration court and federal district court); *Cambridge Christian School, Inc. v. Florida High School Athletic Ass'n, Inc.*, 942 F.3d 1215, 1251–52 (11th Cir. 2019) (declaratory judgment sought as to Establishment Clause claims under the U.S. and Florida Constitutions: no pending parallel proceedings in state court and federal district court). *Cf.* 17A Charles Alan Wright et al., Federal Practice and Procedure § 4247 n.5 (4th ed. 2021) ("[T]he substantial similarity of the issues in the state and federal proceedings is only one factor in the . . . analysis, not an absolute requirement.").

Those cases, however, arose outside of the tort/insurance coverage context at issue here, and could arguably be distinguished on that ground. To eliminate any doubt, we now expressly hold that the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under § 2201(a). The

Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," *Wilton*, 515 U.S. at 286, and nothing in the text of § 2201(a) mentions parallel proceedings. So "discretion under the . . . Act does not turn on the existence of parallel proceedings." *Hellman*, 610 F.3d at 378-79. *Accord Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 398 (6th Cir. 2019); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 143 (3d Cir. 2014); *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 394 (5th Cir. 2003); *United States v. City of Las Cruces,* 289 F.3d 1170, 1183 (10th Cir. 2002); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998); *Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 754 (9th Cir. 1996), *overruled in part on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc).

There is language in both *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 492–93 (1942), and *Wilton*, 515 U.S. at 280—the seminal Supreme Court cases addressing the discretion of district courts under the Declaratory Judgment Act— discussing the existence of concurrent state proceedings. But that is because of the procedural posture of those cases. For example, the defendant in *Brillhart*—who sought dismissal of the declaratory judgment action—argued that declaratory relief was unwarranted because the related state proceeding could fully dispose of the matters between the parties. *See Brillhart*, 316 U.S. at 495. Similarly, the question

posed in *Wilton* was "whether the discretionary standard set forth in [*Brillhart*], or the exceptional circumstances test developed in [*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and other cases] governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings." *Wilton*, 515 U.S. at 279. Given the matters at issue in *Brillhart* and *Wilton*, it is understandable that the Supreme Court discussed principles and considerations that are relevant when a district court is faced with a concurrent proceeding. We therefore agree with the Third Circuit's understanding of those cases:

> *Brillhart* and *Wilton* only discussed [Declaratory Judgment Act] discretion in the context of pending parallel state proceedings because that is the factual context with which they were faced. Thus, they illustrate only one application of [such] discretion to a fact pattern that included the existence of parallel state proceedings. They do not stand for the proposition that [Declaratory Judgment Act] discretion has no life beyond the circumstances to which they applied it.

*Reifer*, 751 F.3d at 143. Indeed, the Supreme Court in *Wilton* explicitly refrained from delineating the contours of discretion under the Declaratory Judgment Act when parallel proceedings do not exist. *See Wilton*, 515 U.S. at 279 ("We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings.").

9

In sum, a district court may exercise its discretion and decline to adjudicate a claim under the Declaratory Judgment Act even in the absence of parallel proceedings.

## B

National Trust's alternative argument is that the existence of parallel proceedings is nevertheless entitled to significant weight. In National Trust's view, a state court tort action against an insured (the alleged tortfeasor) is not parallel to a federal declaratory judgment action on coverage brought by the insurer when (1) the insurer is not a party to the state court action and (2) the liability issues in the state action and the coverage issues in the federal action are not the same. *See* Nat'l Trust Br. at 13. *See also Employers Mut. Cas. Co. v. Kenny Hayes Custom Homes, LLC*, 101 F.Supp.3d 1186, 1189–90 (S.D. Ala. 2015). *Cf. Ambrosia Coal & Construction Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) (explaining, in the context of abstention under *Colorado River*, that a parallel proceeding is one involving substantially the same parties and issues).

As noted, the district court determined that the concurrent proceedings here were parallel because of the significant factual overlap. *See* D.E. 33 at 10. National Trust disagrees with that assessment, and accordingly suggests that the deck should have been stacked against dismissal in the analysis of the *Ameritas* guideposts. We agree, in part, with National Trust's premise. When relevant, the similarity between

concurrent proceedings is a consideration of significant weight. But we disagree with National Trust's assumption that there should be a discrete, parallel-proceeding factor. A district court takes into account the similarity between any concurrent proceedings in its totality-of-the-circumstances analysis under *Ameritas*.

## 1

When a district court is deciding whether to dismiss or stay a § 2201(a) declaratory judgment action in favor of a concurrent proceeding, we agree that the degree of similarity between the proceedings is significant. *See e.g.*, *Reifer*, 751 F.3d at 144–45; *Aetna*, 139 F.3d at 423; *Sherwin-Williams*, 343 F.3d at 394. The more that a concurrent state (or federal) court action is similar to a federal declaratory judgment action, the more likely it will be that a district court's decision to not address a claim under § 2201(a) will be left undisturbed. The inverse is true when proceedings have little in common, because in that situation the concurrent action will likely not decide any of the issues presented in the federal declaratory judgment action. Consequently, the greater the difference between concurrent proceedings, the less likely refusing to exercise jurisdiction will further the principles of wise judicial administration, federalism, comity, and avoidance of duplicative and officious federal proceedings. *See Brillhart*, 316 U.S. at 494–95; *Wilton*, 515 U.S. at 288; *Ameritas*, 411 F.3d at 1331.

Our opinion in *Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235 (11th

11

Cir. 2000), is instructive. There, the Federal Reserve Bank of Atlanta had filed a federal declaratory judgment action under a statute that provided a federal forum for any suit in which the Federal Reserve was a party. *See id.* at 1235. The district court dismissed the federal action in favor of a related worker's compensation state action filed by the declaratory judgment defendant because it believed that the parties' dispute was better litigated in the state courts. *See id.* at 1246–47. The problem was that the relevant federal statute mandated a federal forum for any suit in which the Federal Reserve was a party. *Id.* Because the state court action was essentially a nullity, "there [would] be no state court action to which the federal district court could defer." *Id.* at 1247. We held, therefore, that "[i]t [was] an abuse of discretion . . . to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist." *Id.*

Though no concurrent state proceeding could legally exist in *Thomas*, its rationale applies just as well to situations involving dissimilar concurrent proceedings. We see no reason to distinguish between a legally vitiated state court proceeding and a wholly unrelated state court proceeding. In either circumstance, neither a dismissal nor a stay in favor of the concurrent proceeding would further the principles espoused in *Brillhart*, *Wilton*, and *Ameritas*. Indeed, in *Thomas* we relied on *Michigan Tech Fund v. Cent. Nat. Bank of Broward*, 680 F.2d 736, 742–43 (11th Cir. 1982), a § 2201(a) case where we had reversed a district court's dismissal

because the relevant state proceeding was too dissimilar. *See Thomas*, 220 F.3d at 1247.

That does not mean, however, that similarity is always a relevant consideration. As explained earlier, we have upheld dismissals of declaratory judgment actions that did not involve concurrent proceedings, and which thus were based on considerations other than similarity. *See Osuna*, 877 F.3d at 1312 ("We accept that a plaintiff's failure to state definitely and consistently the declaratory relief sought is in itself a sufficient basis to deny such discretionary relief as a declaratory judgment."); *Cambridge Christian,* 942 F.3d at 1251–52 (upholding a district court's dismissal of a request for a declaration of rights under the Establishment Clause because "the real controversy [was] rooted in the Free Speech and Free Exercise Clauses"). And we did not require the district courts in those cases to overcome a presumption against dismissal as a result. Neither the text of the Declaratory Judgment Act—nor *Brillhart, Wilton,* or *Ameritas*—suggest that similarity must always be considered.

## 2

The district court was tasked with deciding whether to dismiss National Trust's action in favor of the state wrongful death action, so the degree of similarity between the proceedings was a significant consideration. But we disagree with the assumption of the district court and National Trust that similarity is considered as a

discrete, parallel-proceeding factor. Instead, similarity is encompassed by the relevant *Ameritas* guideposts, and it is granted weight in the balancing of those guideposts.

As Mr. Hoge acknowledged at oral argument, we essentially employ a totality-of-the-circumstances standard in this circuit. That is because the guideposts that we provided in *Ameritas* are not exhaustive; not all are required; and no one is controlling. *See Ameritas*, 411 F.3d at 1331. Indeed, district courts may sometimes dismiss declaratory judgment actions without considering any of the *Ameritas* guideposts. *See Osuna*, 877 F.3d at 1312; *Cambridge Christian,* 942 F.3d at 1251–52. Given that reality, we see no need to add a tenth guidepost that may or may not be at issue in a particular case. *Cf. Palmer v. City of Chicago*, 806 F.2d 1316, 1318 (7th Cir. 1986) (explaining that multi-factor tests often "manage[ ] to be at once redundant, incomplete, and unclear").

We agree instead with the Tenth Circuit that consideration of the degree of similarity between proceedings is built into the analysis of relevant factors. *See City of Las Cruces*, 289 F.3d at 1183 ("Rather than dictate that the parallel nature of the proceedings be considered in a preliminary step . . . the similarity of the proceedings [is considered] in the process of balancing the [the Tenth Circuit's *Ameritas*-guidepost analogue].") This makes sense—we set out the guideposts in an appeal where the federal action had been dismissed in favor of a concurrent state

14

proceeding, and we did so in an attempt to further the considerations identified in

*Brillhart* and *Wilton*, and the principles of federalism, efficiency, and comity. *See*

*Ameritas*, 411 F.3d at 1330–31.

Accordingly, some of the *Ameritas* guideposts will lean in favor of or against

exercising jurisdiction as a function of the degree of similarity between concurrent

proceedings. For instance, the fourth *Ameritas* guidepost seeks to prevent procedural

fencing, an umbrella term for the improper use of procedural mechanisms to avoid

a merits ruling or to forum shop. *See Ameritas,* 411 F.3d at 1331. *See also Hyatt*

*Intern. Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) ("[T]he Declaratory

Judgment Act is not a tactical device whereby a party who would be a defendant in

a coercive action may choose to be a plaintiff by winning the proverbial race to the

courthouse.") (internal quotation marks omitted). The fourth *Ameritas* guidepost by

its nature weighs more heavily in favor of declining jurisdiction as the similarity of

concurrent proceedings increases. Additionally, the relevance and weight of the

fifth, sixth, seventh, and eighth guideposts is also driven by the degree of similarity

between proceedings. *See Ameritas*, 411 F.3d at 1331.

Unlike the Tenth Circuit, some of our other sister circuits consider similarity

in a threshold, parallel-proceeding factor. *See e.g.*, *Reifer*, 751 F.3d at 144–45;

*Aetna*, 139 F.3d at 423; *Sherwin-Williams*, 343 F.3d at 394. But if we were to follow

suit, we then would have to fashion a workable, across-the-board definition of

"parallel proceedings." If the proceedings met that definition, they would be "parallel," and the factor would weigh heavily in favor of declining to exercise jurisdiction. If the proceedings did not meet the definition, they would not be "parallel," and the factor would weigh significantly in favor of exercising jurisdiction. A framework based on a technical definition, compliance with which is of significant weight, can turn consideration of similarity into a reductive on/off switch that precludes consideration of the *degree* of similarity.

Take the present case as an example. Assume that we adopt National Trust's definition of parallel proceedings—those that share the insurer as a party and involve the same legal claims. *See* Nat'l Trust Br. at 13–16. Assume further that, as Mr. Hoge and Southern Heating argue, the misalignment of the burner assembly and the location of the fire, if proven in the state action, would make the hostile fire exception applicable. *See* Hoge Br. at 14. The consequence would be that the present proceedings are not parallel, which would create a strong presumption against dismissal. But why should that be if the factual similarity between the proceedings is such that resolution of the state action likely would be dispositive of the coverage issue? As the seventh and eighth *Ameritas* guideposts confirm, the degree to which the issue of coverage will rely on factual issues central to liability in a concurrent proceeding is part and parcel of the similarity analysis. *See Ameritas*, 411 F.3d at 1331. The likelihood that the concurrent proceeding will resolve some or all of the

issues in the declaratory judgment action matters—irrespective of whether the shared issues are legal or factual. *See* 10B Wright et al., Federal Practice and Procedure, § 2758 ("the declaratory action may be dismissed or stayed if the other suit will satisfactorily resolve the controversy between the parties").

The framework proposed by National Trust can also push in other ways against the broad discretion conferred by § 2201(a) and the principles espoused in *Brillhart* and *Wilton*. Consider, for instance, that the law of some states prohibits an injured third party from directly suing an insurer until settling with, or obtaining a verdict against, the insured. That is the case in Florida. *See Hazen v. Allstate Ins. Co.,* 952 So. 2d 531, 534 (Fla. 2d DCA 2007); Fla. Stat. § 627.4136(1). Holding that the existence of a parallel state proceeding requires that an insurer be a party to the state action would mean that no parallel proceedings could exist in Florida insurance coverage cases. Thus, every district court faced with a Florida insurance coverage declaratory judgment action would begin its analysis with a strong presumption in favor of exercising jurisdiction. In those cases, we would be essentially allowing state law to circumscribe the discretion granted by the Declaratory Judgment Act.

For those reasons, we believe that creating an additional guidepost is unwarranted. That said, given the uncertainty in our caselaw prior to today, we understand why the district court considered similarity as a discrete, threshold factor. Because similarity is considered as part of the totality-of-the-circumstances analysis,

however, whether the court abused its discretion depends on its analysis of the *Ameritas* guideposts.

**III**

National Trust contends that the district court misapplied the *Ameritas* guideposts, and that it placed excessive emphasis on the factual overlap between the state and federal actions. Mr. Hoge and Southern Heating respond that the district court properly balanced the *Ameritas* guideposts. We find no abuse of discretion in the district court's totality-of-the-circumstances analysis. *See, e.g., In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) ("[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.") (internal quotation marks omitted).

The first *Ameritas* guidepost asks district courts to consider "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts." *Ameritas*, 411 F.3d at 1331. The district court concluded that Alabama has a compelling interest in determining the issues raised in the declaratory judgment action, given that Southern Heating is an Alabama company, the underlying insurance policy was issued in Alabama, and the decedents were Alabama residents. We see no error in this respect.

Furthermore, Alabama law governs the interpretation of Southern Heating's insurance policy with National Trust, including whether carbon monoxide is

encompassed by the definition of pollutants in the policy exclusion. The parties agree that no Alabama state court has ruled on the issue, and the open question of state law increases Alabama's interest in determining the issue. *See Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc*., 420 F.3d 1317, 1324–25 (11th Cir. 2005) (explaining that, had the district court dismissed the declaratory judgment action, we would have affirmed because the interpretation of an insurance policy exclusion was an open question under Florida law). *See also Reifer,* 751 F.3d at 148–149 (affirming a district court's dismissal of a declaratory judgment action, despite the absence of a parallel state proceeding, because the case involved an undetermined question of Pennsylvania law).

The second and third *Ameritas* guideposts ask district courts to consider "whether the judgment in the federal declaratory action would settle the controversy" and "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue." *Ameritas*, 411 F.3d at 1331. National Trust conceded below that its declaratory judgment action would not resolve the underlying controversy (which it identified as Southern's liability to Mr. Hoge) or clarify the legal relationships at issue (which it identified as the relations at issue in the state action). *See* D.E. 18 at 15. The district court therefore did not abuse its discretion in finding that those considerations weighed in favor of dismissal

to avoid piecemeal litigation.[3]

The fifth *Ameritas* guidepost asks district courts to consider "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." *Ameritas*, 411 F.3d at 1331. The district court determined that a federal ruling on whether carbon monoxide qualified as a pollutant under the policy exclusion, an unresolved issue under Alabama law, would risk increased friction between federal and Alabama courts. Although we may have come out differently on this point—federal courts routinely decide novel state-law issues in diversity actions—we find no abuse of discretion here either. *See In re Rasbury*, 24 F.3d at 168 ("By definition . . . under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call.").

The sixth *Ameritas* factor asks courts to examine "whether there is an alternative remedy that is better or more effective." *Ameritas*, 411 F.3d at 1331. The district court seemingly compared the effectiveness of the state and federal fora. The parties do not take issue with that approach, and given their positions, we do not

---

[3] The district court declined to assign weight to the fourth *Ameritas* guidepost (procedural fencing) although it noted that the state action was filed first, and that National Trust instituted this federal declaratory judgment action before moving to intervene in the state action. The district court noted that this might possibly be viewed as procedural fencing but declined to so find. We cannot conclude that the district court abused its discretion in this regard.

think that the district court abused its discretion. *See Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274, 289 (3d Cir. 2017) (analyzing the adequacy and convenience of remedies by comparing the relative effectiveness of federal and state fora). *But see Ford Motor Co. v. United States,* 811 F.3d 1371, 1379–80 (Fed. Cir. 2016) (comparing the effectiveness of review in the same court under two federal statutes); *South Carolina v. United States*, 243 F. Supp. 3d 673, 698 (D.S.C. 2017) (comparing the effectiveness of declaratory relief versus injunctive relief issued by the same court), *aff'd*, 907 F.3d 742 (4th Cir. 2018). Even if the district court were to certify to the Alabama Supreme Court the question of whether carbon monoxide is a pollutant, *see* Ala. R. App. P. 18, and even if the Alabama Supreme Court answered that question affirmatively, the applicability of the hostile fire exception would remain. That question cannot be answered in the abstract—i.e., without considering Mr. Hoge's factual allegations regarding the misalignment of the furnace burner.

Under the seventh, eighth, and ninth *Ameritas* guideposts, district courts consider "whether the underlying factual issues are important to an informed resolution of the case," "whether the state trial court is in a better position to evaluate those factual issues than is the federal court," and "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy." *Ameritas*, 411 F.3d at 1331. The district court determined that the factual overlap between the liability issue in the state action and the coverage issue in the federal

action also militated in favor of dismissal. The alleged misalignment of the furnace burner and the resulting location of the fire are facts relevant to determining both liability and the applicability of the hostile fire exception. On that basis, the district court concluded that the parties would be presenting duplicative evidence and that the state court was better placed to evaluate those facts. We find no abuse of discretion as to the seventh and eighth guideposts. And given that unsettled Alabama law governs the interpretation of the insurance policy (including the pollution exclusion and the hostile fire exception), we also find no abuse of discretion in the district court's conclusion that there is a close nexus between state law and the underlying factual and legal issues.

National Trust argues that the district court placed too much weight on the factual overlap between the state and federal actions. We disagree. In cases like this one, the degree of similarity between proceedings is a significant consideration. The easy case is one in which the identical factual and legal issues are presented in both proceedings, so that the judgment in the state action will necessarily resolve the federal declaratory judgment action (or vice versa). But a district court's discretion to stay or dismiss under § 2201(a) is not limited to easy cases.

Varying degrees of factual or legal overlap in future cases may (or may not) lead courts to decide differently than the district court in this case. But that is understandable because the abuse of discretion standard gives district courts leeway

to reach differing outcomes. *See Ameritas*, 411 F.3d at 1330. And when reviewing a district court's exercise of discretion under § 2201(a), we must be mindful that "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [a district court's] grasp." *Wilton*, 515 U.S. at 289. Considering the totality of the circumstances, we do not believe that the district court's reliance on the factual overlap was so outsized as to constitute an abuse of discretion.[4]

## IV

We affirm the district court's order dismissing National Trust's federal declaratory judgment action without prejudice.

**AFFIRMED.**

---

[4] Given our affirmance, we need not address the alternative argument made by Mr. Hoge and Southern Heating that National Trust's duty to indemnify claim is not ripe.

23

BRASHER, Circuit Judge, concurring:

Federal district courts routinely issue declaratory judgments about liability insurers' duties to defend and indemnify against the claims in an underlying state tort lawsuit. I join the Court's opinion in full in recognizing that the district court here did not abuse its discretion in declining to issue such a declaratory judgment in these circumstances. But I write separately to emphasize that the Court's opinion does not suggest that district courts should—or could—decline to resolve these routine disputes as a regular practice. Instead, there are two important factors, in my view, that meaningfully distinguish this lawsuit from the kind of run-of-the-mill declaratory judgment action that insurers reasonably expect the federal courts to resolve.

First, to the extent there is a looming legal question in the case, state courts have split on that question and the state law that governs this contract, Alabama law, has no controlling precedents on point. Many state courts have held that carbon monoxide is a "pollutant" under a pollution exclusion in a liability insurance contract. *E.g., Reed v. Auto-Owners Ins. Co.*, 667 S.E.2d 90 (Ga. 2008). Others have held that it is not. *E.g., American States Ins. Co. v. Koloms*, 687 N.E.2d 72, 82 (Ill. 1997). For its part, the Supreme Court of Alabama has described this morass of conflicting caselaw as, "not just a split of authority, but an absolute fragmentation of authority . . . with cases reaching the same conclusion as to a particular issue . . .

on the basis of differing, and sometimes inconsistent, rationales." *Porterfield v. Audubon Indem. Co.,* 856 So. 2d 789, 800 (Ala. 2002). Federal judges are often called on to resolve questions of state law. But against this uniquely uncertain backdrop, I think the district court reasonably declined to make an *Erie* guess about what the Supreme Court of Alabama would say.

Second, unlike most declaratory judgment actions between a liability insurer and its insured, this lawsuit turns more on the facts of the alleged tort than an interpretation of the insurance contract. All parties agree that, even if we were to resolve the pollution-exclusion question in favor of the insurer, a "hostile fire" exception to the exclusion may nonetheless compel the insurer to defend and indemnify. That exception applies if the fire that caused an injury was burning outside of its intended location, and its application can only be resolved by assessing the facts of the accident that allegedly injured the underlying tort plaintiff. Again, in my view, the district court correctly reasoned that the facts surrounding that accident should first be developed through discovery and fact-finding in the underlying state tort litigation, not a federal declaratory judgment action. In fact, given the nature of the insurance company's arguments against coverage, this declaratory judgment action would probably not be ripe until after the state court determined liability. *See Allstate Ins. Co. v. Employers Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir.

1971). Either way, the district court was within its discretion to dismiss the case without prejudice.

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11292

ERRATA

_____

NATIONAL TRUST INSURANCE COMPANY,

Plaintiff - Appellant,

versus

SOUTHERN HEATING AND COOLING INC,
STEVEN HOGE,
as Personal Representative of the Estate of Billy Carl Hoge,
deceased and as Personal Representative of the
Estate of Mary Ellen Hammon Hoge,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

This opinion has been changed as follows:

On page 25, "underlying" should replace "underling" in the following:

Again, in my view, the district court correctly reasoned that the facts

surrounding that accident should first be developed through discovery and fact-

finding in the **underling** state tort litigation, not a federal declaratory judgment action.

Also on page 25, "*Ins.*" should replace "*Ins*", and "*Liab.*" should replace "*Liabl.*" in the following:

*See Allstate **Ins** Co. v. Employers **Liabl.** Assur. Corp*., 445 F.2d 1278, 1281 (5th Cir. 1971).